**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ONE SINGLE FAMILY RESIDENCE LOCATED AT 15603 85TH AVENUE NORTH, LAKE PARK, PALM BEACH COUNTY, FLORIDA, including the real estate at that location, the appurtenances thereunto, and the improvements thereon, Defendant,**

**Gary G. Spears, Claimant–Appellant,**

**George Curtis Spears, Claimant.**

**No. 90–5387.**

United States Court of Appeals,
Eleventh Circuit.

June 18, 1991.

Ronald E. Jones, West Palm Beach, Fla., for claimant-appellant.

Alan Dagen, Ft. Lauderdale, Fla., Linda Collins Hertz, Lynne W. Lamprecht, Jeanne M. Mullenhoff, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT, CLARK and DUBINA, Circuit Judges.

HATCHETT, Circuit Judge:

In this case of first impression, interpreting 21 U.S.C. § 881(a)(6), we hold that one who knowingly commingles legitimate funds with the funds of a co-investor, where the co-investor's funds are subject to forfeiture, is not an "innocent owner," under the statute, and subjects the legitimate funds to forfeiture.

## FACTS

In 1985, Curtis Spears approached his brother Gary with the idea of purchasing a vacant lot and building a house for resale. Shortly thereafter, they bought a parcel of unimproved real property in Palm Beach, Florida, for $22,000, and recorded the title in both names. In his 1986 income tax return, Curtis valued the new residence at $99,193.

Gary, who has been employed for many years with an aircraft engine manufacturer, withdrew $6,134.85 from his savings account to contribute to the purchase of the real property. He also allegedly contributed an additional $5,000 towards construction of the house. Curtis, however, has very few reported legitimate sources of income or employment, a bad credit rating, and a reputation as a drug smuggler. Nonetheless, he produced $6,000 in cash to purchase his share of the property and provided funds for the construction of the house.

As early as the summer of 1985, Curtis approached Jay Pinder, a known drug trafficker, to arrange cocaine importations from the Bahamas utilizing Gary's twenty-three foot center console boat. At trial, Pinder testified that Curtis scheduled some drug smuggling activities around the need to pay for the construction of the house. During 1985 and 1986, Curtis bought cocaine from Pinder and smuggled marijuana.

## PROCEDURAL HISTORY

On February 22, 1989, the United States filed a complaint for forfeiture *in rem* against the real property pursuant to 21 U.S.C. § 881(a)(6).[1] The complaint alleged that Curtis Spears purchased and improved the real property with drug proceeds.

On March 23, 1989, Gary Spears filed a claim to the property alleging that he and his brother, Curtis, were co-owners as tenants in common. Curtis Spears filed a similar claim. After finding that Gary had

---

**1.** Title 21 U.S.C. § 881(a)(6) provides:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
. . . .
(6) All monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter except that no property shall be forfeited under this paragraph to the extent of the interest of an owner by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

contributed legitimate funds, the district court ruled that neither Curtis nor Gary were innocent owners. The district court so ruled because Curtis actively participated in the illegal activity, and Gary knew that his brother did not have a legitimate income source. ·Also, the district court found that Gary knowingly allowed Curtis to use Gary's boat for drug trafficking. On March 8, 1990, the district court entered a judgment forfeiting the real property to the United States.

## CONTENTIONS

Gary Spears contends that he is an innocent owner and his legitimate funds provided for the purchase and improvement of the real property should not be forfeited. Thus, he asserts that only that portion of the value of the real property that has been involved with illegal funds should be subject to forfeiture.

The government contends that Gary Spears is not an innocent owner, even though he contributed legitimate funds, because he had knowledge that his brother purchased and improved the real property with drug proceeds. Thus, Gary's non-innocent owner status forfeits his entire interest in the property.

## ISSUES

The sole issue is whether a property owner who is aware that a co-owner has purchased and improved the real property with drug proceeds may qualify as an innocent owner whose interest in the property is exempt from forfeiture under 21 U.S.C. § 881(a)(6). This issue has far reaching implications for any person knowingly participating in business deals that incorporate drug proceeds.

## DISCUSSION

In addressing this issue of first impression, we apply a clearly erroneous standard to the district court's factual findings and subject the legal decisions to plenary review. *United States v. Real Property and Residence at 3097 S.W. 111th Avenue,* *Miami, Florida,* 921 F.2d 1551, 1555 (11th Cir.1991).

■ When seeking forfeiture under 21 U.S.C. § 881(a)(6), the United States must establish probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale,* 803 F.2d 625, 628 (11th Cir.1986). " 'Probable cause' " is defined as " 'reasonable ground for belief of guilt supported by less than *prima facie* proof but more than mere suspicion.' " *A Single Family Residence, Ft. Lauderdale,* 803 F.2d at 628 (quoting *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980)).

In meeting its burden in this case, the government presented substantial evidence of Curtis's drug transactions in 1985–1986 and Pinder's testimony of Curtis's efforts to arrange drug transactions around his need to construct the house. From the evidence, it is uncontested that a substantial connection existed between the property and Curtis's illegal activities.

■ Once probable cause is established, the burden shifts to the claimant to establish by a preponderance of the evidence a defense to the forfeiture. *See United States v. One 1944 Steel Hull Freighter,* 697 F.2d 1030 (11th Cir.1983); *United States v. $4,255,000,* 762 F.2d 895, 905 (11th Cir.1985). This burden is met either by rebutting the government's evidence that the property was purchased with proceeds of illegal drug activities or a showing that the claimant is an "innocent owner" who did not know of the property's connection with drug sales. *A Single Family Residence, Ft. Lauderdale,* 803 F.2d at 629. Claimant must demonstrate a lack of actual knowledge. *$4,255,000,* 762 F.2d at 906.

Gary Spears suggests that he is an innocent owner because he contributed legitimate funds towards the purchase and improvement of the real property. In Gary's view, once the district court made a factual finding that his contribution was from un-

tainted funds, his knowledge of the source of his brother's contribution became immaterial. Thus, he argues, since his funds cannot be traced to drug activities, he is entitled to receive the value of his interest in the real property. He argues that the interest of an innocent co-owner of property should not be subject to forfeiture merely because the innocent owner is aware that his co-owner has purchased or improved the real property with funds derived from an illegal source.

Gary relies heavily upon *United States v. Premises Known as 2639 Meeting House Road, Jamison, Pennsylvania*, 633 F.Supp. 979 (E.D.Pa.1986). In *2639 Meeting House Road*, the government sought the forfeiture of two liquor licenses and two parcels of real property owned by Robert Sebzda, Glenn Leiby, and George Leiby. After a grand jury indictment, Robert Sebzda and Glenn Leiby pleaded guilty to the manufacture and sale of illegal drugs. The court found that Sebzda and Glenn Leiby's investment in the subject properties came from the proceeds of drug transactions, while George Leiby invested legitimate funds. It also found that George knew that Sebzda and Glenn Leiby's interests were derived from drug proceeds. Relying on the legislative history of 21 U.S.C. § 881(a)(6), the court found that George was entitled to his interest in the properties to the extent that he could prove they were not purchased with drug proceeds.[2]

Our district courts have addressed similar issues relating to banks. In *United States v. One Single Family Residence Located at 6960 Miraflores Avenue, Coral Gables, Florida*, 731 F.Supp. 1563 (S.D.Fla.

1990), the government had probable cause to believe that Indalecio Iglesias bought real property and constructed a residence worth $1.2 million with drug profits.[3] Upon learning of an Internal Revenue Service investigation, Iglesias obtained a mortgage from Republic National Bank of Miami (Republic) for $800,000. After approving the loan, Republic transferred the loan proceeds to a Swiss bank account through two cashier's checks. At the time of the loan, Iglesias had listed the house for sale.

The court took these and other facts into consideration and concluded

> Republic has failed to meet its burden of showing lack of actual knowledge. On the contrary, every fact in the record points irrefutably to Republic's knowing involvement. These facts when considered in their totality suggest actual knowledge if not complicity on the part of the lender. Congress has sent a clear message in the recent legislation enacted that it will not permit the financial community to knowingly do business with drug dealers. This opinion merely follows that clear message.

*One Single Family Residence*, 731 F.Supp. at 1573 (footnotes omitted). Even though Republic's contribution consisted of legitimate funds, the court denied Republic's innocent owner claim because it knew of Iglesias's illegal activities.

Additionally, in *United States v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Florida*, 683 F.Supp. 783 (S.D.Fla.1988), the American Bankers Insurance Company (American Bankers) issued a $50,000 bail bond posted for a criminal defendant, secured by a

---

**2.** The court in *Meeting House Road* relied on the portion of legislative history which states:

> Due to the penal nature of forfeiture statutes it is the intent of these provisions that property will be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent. Specifically, the Senate amendment provides for the forfeiture of property exchanged or intended to be exchanged in an illegal drug transaction. In addition, it provides for forfeiture of property which is the proceed of an illegal drug transaction only if there is a traceable connection between such property and the illegal ex-

change of controlled substances. Thus, if such proceeds were, for example, *commingled with other assets involved in intervening legitimate transactions or otherwise changed in form, they would still be subject to forfeiture but only to the extent that it could be shown that a traceable connection to an illegal transaction and controlled substances existed.*

7 U.S.Code Cong. & Admin.News 9496, 9522 (1978) (emphasis added).

**3.** This case involved 21 U.S.C. § 881(a)(7). Sections 881(a)(6) and 881(a)(7) contain identical innocent owner provisions.

promissory note and a mortgage on his house. The defendant failed to report as ordered and American Bankers paid the value of the bond. Subsequently, the United States filed forfeiture proceedings against the house. In the forfeiture proceeding, American Bankers claimed innocent owner status and sought to recoup its funds through its mortgage claim. The court held that American Bankers was not an innocent owner under 21 U.S.C. § 881(a)(6) and could not recover its funds. It further held that the bank had actual knowledge of the defendant's drug dealings because an American Bankers agent was present at the bond hearing.

Thus, to qualify as innocent owners in both Southern District of Florida cases, the banks were required to show a lack of knowledge and a contribution of legitimate funds.[4] We hold Gary Spears to a similar standard.

We find *2639 Meeting House Road*'s rationale unpersuasive. In commenting on section 881(a)(6)'s innocent-owner exception, Senator Nunn explained that the rationale for the exception was " 'to make it clear that a bona fide party who has no knowledge or consent to the property he owns having been derived from an illegal transaction, that party would be able to establish that fact under this amendment and forfeiture would not occur.' " *2901 S.W. 118th Court, Miami, Florida*, 683 F.Supp. at 787 (quoting remarks of Senator Nunn, Congressional Record–Senate, July 27, 1978, p. S23057). Also, in *$4,255,000*, we interpreted the legislative history cited in *2639 Meeting House Road* as authority to forfeit the investments of those who knowingly do business with drug dealers. *$4,255,000*, 762 F.2d at 905. Additionally, *2639 Meeting House Road* ignores the remaining language of the legislative history which states:

Finally, it should be pointed out that no property would be forfeited under the Senate amendment to the extent of the interest of any innocent owner of such property. The term owner should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized. Specifically, the property would not be subject to forfeiture *unless the owner of such property knew or consented to the fact that:* (1) the property was furnished or intended to be furnished in exchange for a controlled substance in violation of law, (2) *the property was proceeds traceable to such an illegal exchange,* or (3) the property was used or intended to be used to facilitate any violation of federal illicit drug laws.

7 U.S.Code Cong. & Admin.News 9522–23 (1978) (emphasis added). Thus, the legislative history instructs forfeiture of legitimate funds that are knowingly invested with "proceeds traceable to such an illegal exchange."

 Congress has already made the hard choices in the area of forfeiture. The statute implicitly differentiates between "wrongdoers" and "innocent owners." All persons and entities connected with the real property subject to forfeiture are wrongdoers except those who are innocent owners. Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities. As to a wrongdoer, any amount of the invested proceeds traceable to drug activities forfeits the entire property. We have never held that as to a wrongdoer only the funds traceable to illegal activities may be forfeited. If one is an innocent owner, no amount of that person's or entity's funds are forfeitable. On the other hand, if one is a wrongdoer, the full value of the real property is forfeitable because

---

4. Language in *2901 S.W. 118th Court, Miami, Florida* requires a claimant to demonstrate that it "did everything reasonably possible" to prevent illegal use of the property. *2901 S.W. 118th Court, Miami, Florida*, 683 F.Supp. at 788. This language is ultimately premised upon dicta found in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d

452 (1974). In that case, the Supreme Court stated, "it would be difficult to reject the constitutional claim of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero–Toledo*, 416 U.S. at 689, 94 S.Ct. at 2094.

some of the funds invested are traceable as the statute dictates.

 Gary Spears continued to contribute funds for the purchase of the real property with the knowledge that his brother did not have a legitimate source of income and with knowledge that some income invested in the real property was derived from drug dealings. Additionally, Gary allowed his boat to be used for drug deals. We have stated "those who normally do business with drug dealers do so at their own risk." *$4,255,000*, 762 F.2d at 905. Therefore, we hold that when a claimant to a forfeiture action has actual knowledge, at any time prior to the initiation of the forfeiture proceeding, that claimant's legitimate funds are commingled with drug proceeds, traceable in accord with the forfeiture statute, the legitimate funds are subject to forfeiture. *See $4,255,000*, 762 F.2d at 905. We conclude that under section 881(a)(6), legitimate funds are forfeitable when knowingly commingled with forfeitable funds.

In *$4,255,000* we stated:
Because *Calero–Toledo* did not involve the statutory 'innocent owner' defense contained in 21 U.S.C. § 881(a)(6), we question the government's invocation of the *Calero–Toledo* dicta in this case. Nevertheless, because we find that [the defendant] failed to meet the actual knowledge standard, we leave for another day the question of applicability of the *Calero–Toledo* dicta to forfeiture actions under 21 U.S.C. § 881(a)(6).

*$4,255,000*, 762 F.2d at 906 n. 24. We now hold that the "reasonably possible" language of *Calero–Toledo* applies to section 881(a)(6) proceedings.[5]

 Thus, in applying this rule, a claimant who has actual knowledge of the commingling of legitimate and drug funds may be spared forfeiture as an innocent owner if the claimant can prove that everything reasonably possible was done to withdraw

the commingled funds or to dispose of the property. *See United States v. 141st Street Corp. by Mark Hersh*, 911 F.2d 870, 878–79 (2d Cir.1990).

In this case, it is clear that Gary cannot meet the reasonably possible standard. Therefore, the district court acted properly in forfeiting Gary's interest in the subject real property.

Accordingly, we affirm the district court.

AFFIRMED.

---

5. Of course, the timing of the investment, the time at which the claimant gained knowledge, and the filing of the forfeiture action will be important in resolving the "reasonably possible" issue. Investments differ from regular drug schemes. One may easily invest with a partner today and find out a year later that the partner's funds meet the tracing requirement of the forfeiture statute. An innocent investor who "learns too late" must be protected.